CASE NO. 19-7497

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

---

DAVID NIGHTHORSE FIREWALKER-FIELDS,

*Plaintiff - Appellant,*

v.

JACK LEE, Superintendent;
MIDDLE RIVER JAIL AUTHORITY,

*Defendants - Appellees,*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
AT ROANOKE

---

**SUPPLEMENTAL BRIEF OF APPELLEES**

---

Julian F. Harf
Emily K. Stubblefield
GUYNN WADDELL CARROLL & LOCKABY, P.C.
415 South College Avenue
Salem, VA 24153
540-387-2320
julianh@guynnwaddell.com
emilys@guynnwaddell.com

*Counsel for Appellees*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

ARGUMENT .............................................................................................................2

    I.    *Kennedy* does not impact this Court's analysis of Firewalker-Fields' free exercise claim................................................................2

    II.    The *Kennedy* decision supports a finding for Appellees on Firewalker-Fields' Establishment Clause challenge ..................................4

CONCLUSION ..........................................................................................................8

# TABLE OF AUTHORITIES

## Cases

*American Legion v. American Humanist Assn*,
  139 S. Ct. 2067 (2019) ................................................................................ 5

*Bell v. Wolfish*,
  441 U.S. 520 (1979) ................................................................................... 6

*Block v. Rutherford*,
  468 U.S. 576 (1984) ................................................................................... 6

*Capitol Square Review & Advisory Bd. v. Pinette*,
  515 U.S. 753 (1995) ................................................................................... 5

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993) ................................................................................... 3

*Johnson v. California*,
  543 U.S. 499 (2005) ................................................................................... 2

*Jones v. North Carolina Prisoners' Union*,
  433 U.S. 119 (1977) ................................................................................... 6

*Kennedy v. Bremerton Sch. Dist.*,
  142 S. Ct. 2407 (2022) ......................................................................... *passim*

*Lee v. Weisman*,
  505 U.S. 577 (1992) ............................................................................... 6, 7

*O'Lone v. Estate of Shabazz*,
  482 U.S. 342 (1987) ................................................................................... 2

*Overton v. Bazzetta*,
  539 U.S. 126 (2003) ................................................................................... 4

*Pell v. Procunier*,
  417 U.S. 817 (1974) ................................................................................... 6

*Procunier v. Martinez*,
  416 U.S. 396 (1974) ................................................................................... 6

*Town of Greece v. Galloway*,
  572 U.S. 565 (2014) ................................................................................... 5

*Turner v. Safley*,
   482 U.S. 78 (1987) .................................................................................. 1, 2, 3, 6

*Washington v. Harper*,
   494 U.S. 210 (1990) ................................................................................................ 2

iii

Appellees Jack Lee and Middle River Jail Authority, by counsel, submit the following supplemental brief pursuant to this Court's July 26, 2022 Order.

In *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022), Kennedy, a high school football coach, claimed that the Bremerton School District violated his free exercise and free speech rights under the First Amendment when it terminated him for praying at midfield after football games. When the district superintendent informed Kennedy he found this practice problematic, Kennedy offered to pray alone, after his team left the field and was busy with other activities. *Id.* at 2417. Nevertheless, the school district believed that permitting Kennedy to pray in this manner violated the Establishment Clause because the school district feared it would appear to a reasonable observer that the district endorsed Kennedy's message. *Id.* at 2422. The school district posited that Kennedy's free exercise rights must yield to avoid the district's perceived endorsement of religious activities. *Id.* at 2417. In a detailed opinion, the Supreme Court found that permitting Kennedy's prayer did not violate the Establishment Clause and consequently rejected the school district's justification for termination. The Court held, therefore, that the school district violated Kennedy's free exercise rights when it terminated him for engaging in postgame prayer.

Because *Kennedy* did not involve the religious rights of prisoners, the Supreme Court had no reason to discuss *Turner v. Safley*, 482 U.S. 78, 90 (1987),

1

in its Free Exercise Clause or Establishment Clause analysis. As detailed in Appellees' Response Brief, the Supreme Court has explicitly held that *Turner* applies to all claims by prisoners involving rights that must "necessarily be compromised for the sake of proper prison administration." *Johnson v. California*, 543 U.S. 499, 510 (2005); *see also Washington v. Harper*, 494 U.S. 210, 224 (1990) (holding *Turner* is not limited to rights under the First Amendment and applies to "all circumstances in which the needs of prison administration implicate constitutional rights."). While the nature of imprisonment necessitates that jails provide accommodations for religious exercise, jail officials must account for administrative concerns including jail safety and resources, which dictate that an inmate's opportunities for religious exercise be tailored to fit the jail setting. *See, e.g.*, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987); *Turner*, 482 U.S. at 90. The *Kennedy* decision did not affect *Turner*'s applicability. For the reasons discussed on brief and below, the application of *Turner* in this case mandates a finding in favor of Appellees on Firewalker-Fields' free exercise and establishment claims.

## ARGUMENT

**I.**    ***Kennedy* does not impact this Court's analysis of Firewalker-Fields' free exercise claim.**

In several key ways, the *Kennedy* decision supports affirming the district court's decision. In others, it has limited applicability to this case due to the

2

context in which the *Kennedy* claim arose. In particular, the *Kennedy* decision does not impact Firewalker-Fields' free exercise claim. Both parties agree that *Turner v. Safley* provides the test for free exercise challenges in the prison context, and the *Kennedy* decision did not alter that rule. A court evaluating a prisoner's free exercise claim must determine whether the challenged policy is reasonably related to legitimate penological interests. *Turner*, 482 U.S. at 89.

In *Kennedy*, the Supreme Court made no reference to *Turner* because the case involved the free exercise rights of a free citizen. This distinction is critical. As discussed in *Kennedy*, when a free citizen shows a governmental entity has burdened his sincere religious practice under a policy that is not neutral or generally applicable, the burden shifts to the government to "satisfy 'strict scrutiny' by demonstrating its course was justified by a compelling state interest and was narrowly tailored in pursuit of that interest." *Kennedy*, 142 S. Ct. at 2422 (quoting *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993)).

In contrast, this burden-shifting framework does not apply in the jail context, and the jail is not obligated to satisfy strict scrutiny even if it encroaches on an inmate's constitutional rights. If a jail regulation impinges on an inmate's constitutional rights, "the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. And if the inmate successfully

3

demonstrates that a regulation impinges on his free exercise rights, the burden *remains on the inmate* to disprove the validity of a jail regulation. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). It is undisputed, established law that *Turner* applies to free exercise claims in the prison context, and thus Firewalker-Fields' free exercise claim is not controlled by the free exercise discussion in *Kennedy*.

**II.    The *Kennedy* decision supports a finding for Appellees on Firewalker-Fields' Establishment Clause challenge.**

While *Turner* was not a subject of the Supreme Court's analysis in *Kennedy*, the *Kennedy* decision provides valuable insights germane to the establishment claim in this case. The school district defended its policy on the basis that allowing Kennedy to pray would violate the Establishment Clause. Accordingly, though Kennedy claimed violations of his free exercise and free speech rights, the Supreme Court's analysis focused largely on evaluating whether permitting Kennedy's postgame prayer violated the Establishment Clause. On this point, the Supreme Court's holding and rationale supports the district court's decision here.

The Supreme Court in *Kennedy* ultimately decided that permitting Kennedy's postgame prayer did not violate the Establishment Clause. In doing so, the Court rejected the school district's argument that a "reasonable observer" would consider the school district's acquiescence to Kennedy's postgame prayer as an "endorsement" of religion. *Kennedy*, 142 S. Ct. at 2427. The Court held *Lemon* and its endorsement test offshoot were not viable Establishment Clause tests. The

4

Court cited approvingly to a case which noted such tests "'invited chaos' in lower courts, led to 'differing results' in materially identical cases, and created a 'minefield' for legislators." *Id.* (quoting *Capitol Square Review and Advisory Bd. v. Pinette*, 515 U.S. 753, 768-69 n. 3 (1995)). The Court found an Establishment Clause violation is not automatic simply because a governmental entity chooses not to censor private religious speech, and the Establishment Clause does not "compel the government to purge from the public sphere anything an objective observer could reasonably infer endorses or partakes of the religious." *Id.*

Of particular importance to this case, the *Kennedy* Court disapproved of *Lemon*'s "grand unified," one-size-fits-all approach to establishment claims. *Id.* (citing *American Legion v. American Humanist Assn.*, 139 S. Ct. 2067, 2071 (2019) (plurality opinion)). Instead, it cited favorably to *American Legion*, which emphasized "a more modest approach" to Establishment Clause cases; one "*that focuses on the particular issue at hand and looks to history for guidance.*" *American Legion*, 139 S. Ct. at 2071 (emphasis added). In line with this context-based approach, the *Kennedy* Court decided the Establishment Clause "must be interpreted by 'reference to historical practices and understandings.'" *Kennedy*, 142 S. Ct. at 2428 (quoting *Town of Greece v. Galloway*, 572 U.S. 565, 576 (2014)).

5

The Supreme Court's approach in *Kennedy* mirrors its approach in *Turner*. *Turner* controls because effective prison administration necessarily impacts the manner in which inmates can exercise their constitutional rights. *Turner* provides the mechanism for courts to perform the context-specific evaluation required in a prisoner's Establishment Clause challenge. Further, it is grounded in "historical practices and understandings" because it is based on a principle – according deference to prison authorities to make administrative judgments, while protecting inmates' constitutional rights – that has been recognized by the Supreme Court for at least 48 years. *See Turner*, 482 U.S. at 84-89 (considering *Procunier v. Martinez*, 416 U.S. 396 (1974), *Pell v. Procunier*, 417 U.S. 817 (1974), *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977), *Bell v. Wolfish*, 441 U.S. 520 (1979), and *Block v. Rutherford*, 468 U.S. 576 (1984)).

Moreover, notwithstanding *Turner*, *Kennedy* raises doubts as to whether the policies challenged by Firewalker-Fields even encroached on his constitutional rights in the first instance. While the *Kennedy* decision dispensed with *Lemon*, it made clear that the *Lee* coercion test is still intact. *See, e.g.*, *Kennedy*, 142 S. Ct. at 2429 (stating that the government cannot coerce citizens to engage in religious exercise) (citing *Lee v. Weisman*, 505 U.S. 577, 589 (1992)). Under *Lee*, the government "may not coerce anyone to support or participate in religion or its

6

exercise." *Lee*, 505 U.S. at 587. Firewalker-Fields cannot establish that Appellees coerced him to participate in the Christian service.

The *Kennedy* Court determined that Kennedy's prayer after football games was not coercive. *Kennedy*, 142 S. Ct. at 2429. It reasoned that Kennedy did not seek to direct prayers at students nor did he require students to participate; indeed, he proposed to pray while the team was occupied with other tasks. *Id.* at 2429-30. That some people would see him praying on the field was immaterial because "learning how to tolerate speech or prayer of all kinds is 'part of learning how to live in a pluralistic society,' a trait of character essential to 'a tolerant citizenry.'" *Id.* at 2430 (citing *Lee*, 505 U.S. at 590). The Supreme Court found that the school district's proposed rule, that any visible religious conduct by a teacher or coach was impermissibly coercive, "would be a sure sign that . . . Establishment Clause jurisprudence had gone off the rails." *Id.* at 2431. In short, "permitting private speech is not the same thing as coercing others to participate in it." *Id.*

With this backdrop, it is clear Appellees' broadcast of a weekly Christian service in the day room was not coercive. Like the students in *Kennedy*, the MRRJ did not require Firewalker-Fields to watch the televised service, nor did he suffer adverse consequences for deciding not to watch. As noted by the district court, Firewalker-Fields put forth no evidence to demonstrate he lost any tangible benefit by choosing to remain in his cell during the service. JA 68 n. 10. Furthermore,

7

learning how to tolerate other inmates' religious observances is part of living in a "pluralistic society." *Kennedy*, 142 S. Ct. at 2430. Contrary to Appellant's argument, the MRRJ did not coerce Firewalker-Fields to take part in the Sunday service simply by permitting it to occur. *See id.* at 2431. To the extent Firewalker-Fields was offended by the offering of a Christian service, "[o]ffense . . . does not equate to coercion." *Id.* (internal quotations and citations omitted). For these reasons, and for the reasons discussed in Appellees' Response Brief, the district court properly granted summary judgment to Appellees.

## CONCLUSION

While *Kennedy* is not directly on point, its precepts support a finding in favor of the Appellees. For the foregoing reasons, and for the reasons discussed on brief and in oral argument, Appellees Jack Lee and Middle River Jail Authority respectfully request that the Court affirm the ruling of the district court granting summary judgment in their favor.

JACK LEE and
MIDDLE RIVER JAIL AUTHORITY

By /s/ Julian F. Harf
Julian F. Harf (VSB # 90775)
Guynn, Waddell, Carroll & Lockaby, P.C.
415 S. College Avenue
Salem, Virginia 24153
Phone: 540-387-2320
Fax:    540-389-2350
Email: julianh@guynnwaddell.com
*Attorney for Appellees Jack Lee and Middle River Jail Authority*

8